1
2
3
4
5

LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

6

Attorneys for Plaintiff Brian J. Majur
*[Additional Counsel Appear on Signature Page]*

7

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

**C08    01013**

**MMC**

10
11

BRIAN J. MAJUR, Individually and On Behalf of
All Others Similarly Situated,

No.

12

Plaintiff,

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF FEDERAL
SECURITIES LAWS

13

v.

14
15

SiRF TECHNOLOGY HOLDINGS, INC.,
MICHAEL L. CANNING, DIOSDADO P.
BANATAO, GEOFFREY RIBAR and KANWAR
CHADHA,

**JURY TRIAL DEMANDED**

16

Defendants.

17
18

19   1.    Plaintiff alleges the following based upon the investigation of plaintiff's counsel,

20   which included a review of United States Securities and Exchange Commission ("SEC") filings

21   by SiRF Technology Holdings, Inc. ("SiRF" or the "Company"), as well as regulatory filings and

22   reports, press releases and other public statements issued by the Company, media reports about

23   the Company, and other information about the Company readily available on the Internet.

24   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set

25   forth herein after a reasonable opportunity for discovery.

26                              **SUMMARY OF ACTION**

27   2.    This is a federal class action on behalf of purchasers of the securities of SiRF

28   between October 30, 2007 and February 4, 2008, inclusive (the "Class Period"), seeking to



1  pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2      3.    2. SiRF is a supplier of Global Positioning System, or GPS, based location

3  technology solutions designed to provide location awareness capabilities in high-volume mobile

4  consumer and commercial applications. The Company is headquartered in San Jose, California.

5      4.    Throughout the Class Period, defendants knew or recklessly disregarded that their

6  public statements concerning SiRF's business, financial position and future prospects were

7  materially false and misleading because they failed to disclose the truth about demand for the

8  Company's products and the effect of the Company's acquisition of Centrality Communications,

9  Inc. ("Centrality") on SiRF's business and financial performance. As a result of defendants' false

10  statements and failures to disclose, SiRF stock traded at artificially inflated prices during the

11  Class Period.

12
13      5.    On February 4, 2008, SiRF shocked the market when it issued a press release

14  announcing disappointing and surprising financial results for the Company's fourth quarter and

15  fiscal year 2007, causing shares of SiRF to plummet 54% in a single day on extremely heavy

16  trading volume.

17      6.    As a direct result of the market learning of defendants' wrongdoing, the price of

18  SiRF shares declined and plaintiff and the Class suffered a loss on their investments in SiRF.

19                      **JURISDICTION AND VENUE**

20      7.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

21  the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by

22  the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

23      8.    This Court has jurisdiction over the subject matter of this action pursuant to 28

24  U.S.C. §§ 1331 and 1367 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

25      9.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and

26  28 U.S.C. § 1391(b) because many of the acts and practices complained of herein occurred in this

27  District and defendants maintain offices in this District from which the day-to-day activities of

28

---

CLASS ACTION COMPLAINT

1    the Company are directed.

2        10.    In connection with the acts alleged in this complaint, defendants, directly or

3    indirectly, used the means and instrumentalities of interstate commerce, including, but not

4    limited to, the mails, interstate telephone communications and the facilities of the national

5    securities markets.

6                                    **PARTIES**

7        11.    Plaintiff Brian J. Majur, as set forth in the accompanying certification

8    incorporated by reference herein, purchased the securities of SiRF during the Class Period and

9    has been damaged thereby.

10       12.    Defendant SiRF is a supplier of Global Positioning System, or GPS, based

11   location technology solutions designed to provide location awareness capabilities in high-volume

12   mobile consumer and commercial applications. The Company markets and sells its products in

13   three target platforms: wireless handheld devices, automotive electronic systems, and consumer

14   and computer devices.

15

16       13.    Defendant Michael L. Canning ("Canning") at all times relevant to this action,

17   served as the Company's President and Chief Executive Officer ("CEO").

18       14.    Defendant Diosdado P. Banatao ("Banatao") is a co-founder of SiRF, and at all

19   times relevant to this action, served as the Company's Chairman.

20       15.    Defendant Geoffrey Ribar ("Ribar") at all times relevant to this action, served as

21   the Company's Chief Financial Officer ("CFO") and Senior Vice President of Finance.

22       16.    Defendant Kanwar Chadha ("Chadha") is co-founder of SiRF and at all times

23   relevant to this action served as a director and as Vice President of Marketing.

24       17.    The Defendants described in ¶¶ 13-16, above, are referred to herein as the

25   "Individual Defendants."

26       18.    Because of the Individual Defendants' positions with the Company, they had

27   access to the adverse undisclosed information about the Company's  business, operations,

28

products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

19.    The Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

20.    As officers and controlling persons of a publicly held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and traded on the Nasdaq, and governed by the provisions of the federal securities laws, the Individual Defendants had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

21.    The Individual Defendants participated in the drafting, preparation, and/or

1   approval of the various public and shareholder and investor reports and other communications

2   complained of herein and were aware of, or recklessly disregarded, the misstatements contained

3   therein and omissions therefrom, and were aware of their materially false and misleading nature.

4   Because of their Board membership and executive and managerial positions with SiRF, the

5   Individual Defendants had access to the adverse undisclosed information about SiRF's business

6   operations as particularized herein and knew (or recklessly disregarded) that these adverse facts

7   rendered the positive representations made by or about SiRF and its business issued or adopted

8   by the Company materially false and misleading.

9       22.     The Individual Defendants, because of their positions of control and authority as

10  officers and directors of the Company, were able to and did control the content of the various

11  SEC filings, press releases and other public statements pertaining to the Company during the

12  Class Period. The Individual Defendants were provided with copies of the documents alleged

13  herein to be misleading prior to or shortly after their issuance and/or had the ability and/or

14  opportunity to prevent their issuance or cause them to be corrected. Accordingly, the Individual

15  Defendants are responsible for the accuracy of the public reports and releases detailed herein and

16  are therefore primarily liable for the representations contained therein.

17

18      23.     The Individual Defendants are liable as participants in a fraudulent scheme and

19  course of business that operated as a fraud or deceit on purchasers of SiRF securities by

20  disseminating materially false and misleading statements and/or concealing material adverse

21  facts. The scheme: (i) deceived the investing public regarding SiRF's business, operations,

22  prospects and the intrinsic value of SiRF securities; and (iii) caused plaintiff and other members

23  of the Class to purchase SiRF securities at artificially inflated prices.

24                          **CLASS ACTION ALLEGATIONS**

25      24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the

26  Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired

27  SiRF securities during the Class Period (the "Class").

28      25.     The members of the Class are so numerous that joinder of all  members is

impracticable. The disposition of their claims in a class action will provide substantial benefits to

1    the parties and the Court. As of February 2007, SiRF had more than 52 million shares of stock

2    outstanding, owned by hundreds if not thousands of persons.

3        26.    There is a well-defined community of interest in the questions of law and fact

4    involved in this case. Questions of law and fact common to the members of the Class which

5    predominate over questions which may affect individual Class members include:

6            (a)    whether the 1934 Act was violated by the defendants;

7            (b)    whether defendants omitted and/or misrepresented material facts;

8            (c)    whether defendants' statements omitted material facts necessary to make

9    the statements made, in light of the circumstances under which they were made, not misleading;

10            (d)    whether defendants knew or deliberately disregarded that their statements

11    were false and misleading;

12

13            (e)    whether the price of SiRF securities was artificially inflated; and

14            (f)    the extent of damage sustained by Class members and the appropriate

15    measure of damages.

16        27.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class

17    sustained damages from defendants' wrongful conduct.

18        28.    Plaintiff will adequately protect the interests of the Class and has retained counsel

19    who are experienced in class action securities litigation. Plaintiff has no interests which conflict

20    with those of the Class.

21        29.    A class action is superior to other available methods for the fair and efficient

22    adjudication of this controversy.

23                        **SUBSTANTIVE ALLEGATIONS**

24    **Background**

25        30.    SiRF Technology Holdings, Inc., through its subsidiaries, engages in the

26    development and marketing of semiconductor and software products that are designed to enable

27    location-awareness utilizing global positioning system (GPS) and other location technologies

28    worldwide.

CLASS ACTION COMPLAINT

31.    On August 6, 2007, the Company acquired Centrality Communications, Inc.
Under the terms of the agreement, SiRF acquired all the outstanding shares of Centrality capital
stock in exchange for approximately 8.1 million shares of SiRF common stock.  In a press
release announcing the acquisition, defendant Canning stated "[w]ith the addition of the
Centrality multifunction SoC platform and multimedia expertise, SiRF is well positioned to go
beyond GPS and provide a very attractive value-added product portfolio that addresses the
emerging price performance and functionality needs of our target markets."

**Defendants' False and Misleading**
**Statements Issued During the Class Period**

32.    The Class Period begins on October 30, 2007, the day the Company issued a press
release announcing financial results for third quarter 2007.  Among other things, the press release
made the following representations concerning the Company's financial performance,  stating in
pertinent part:

> *SiRF reports record revenue and strong Non-GAAP operating profits*
>
> SAN JOSE, Calif.- October 30, 2007/PRNewswire/ -- SiRF Technology Holdings,
> Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium
> software location platforms, today reported unaudited financial results for its third
> quarter ended September 30, 2007.
>
> Net revenue in the third quarter of 2007 was $91.2 million, an increase of 43
> percent from $63.7 million reported in the third quarter of 2006.  Net revenue in
> the first nine months of 2007 was $229.0 million, an increase of 32 percent from
> $173.5 million reported in the first nine months of 2006.  Gross margin in the
> third quarter of 2007 was 52.2 percent, as compared to 55.6 percent in the third
> quarter of 2006. Gross margin in the first nine months of 2007 was 53.7 percent,
> as compared to 55.7 percent in the first nine months of 2006.
>
> Net loss for the third quarter of 2007 was $16.1 million, or $(0.28) per diluted
> share, based on 57.0 million diluted weighted average shares outstanding.  This
> compares with net income of $2.6 million, or $0.05 per diluted share, based on
> 55.6 million diluted weighted average shares outstanding in the third quarter of
> 2006.
>
> Net loss for the first nine months of 2007 was $11.1 million, or $(0.21) per diluted
> share, based on 54.0 million diluted weighted average shares outstanding.  This
> compares with net loss of $6.7 million, or $(0.13) per diluted share, based on 50.9
> million diluted weighted average shares outstanding in the first nine months of
> 2006.
>                                  * * *
> "We believe our Q3 performance has been exceptional. We have once again

posted record revenues on record shipment volumes with excellent profitability and strong bookings momentum. Our acquisition of Centrality and broadening of our product portfolio with the System-on-Chip (SoC) products has been enthusiastically welcomed by customers, and the SoC products are also breaking revenue and shipment volume records," said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

**Q3'2007 Highlights and Business Outlook:**

-We have successfully closed the merger with Centrality Communications and are integrating our products, platforms and personnel. The resulting combination has exceeded our expectations and has been very well received by customers, vendors and employees alike. We are seeing significant design win momentum at major PND customers for our SoC platforms. We are now working on synergistic extensions of our combined fundamental technology.

Growth in our Automotive business, and particularly in Portable Navigation Devices (PNDs), continues to be very strong and to mirror overall market growth. In Q3, we made record volume shipments to a number of major customers. In addition, many of our customers, including ASUS, Garmin, HP, Magellan, Mio, Siemens VDO and TomTom, launched new platforms using SiRFstarIII or SiRF SoC based products this quarter.

Interest in and demand for our products continues to accelerate in our Wireless business. One of our key tier one customers launched their first new GPS enabled handset which has been qualified at two operators this quarter; and RIMM continues to launch new GPS-enabled products and expand the number of operators using their platform. Multiple handsets based on the SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio ASUS and Amoi, one of the leading local handset manufacturer in China. In July, Chung-Hwa Telecom launched LBS services based on a SiRF SUPL 1.0 AGPS server and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators.

In the consumer and mobile computing market, SiRFstarIII architecture is gaining more momentum. Garmin launched a new generation of their SiRFstarIIII based Edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON™ handhelds featuring National Geographic's award winning full color topographic maps. One of the leading mobile gaming customers launched a GPS accessory with gaming and navigation software for their mobile gaming platform and we are also starting to see increasing interest from digital camera industry.

33.     That same day, October 30, 2007, SiRF hosted a hosted a conference call for analysts and investors and made the following representations, among others, concerning the Company's performance during third quarter 2007:

CLASS ACTION COMPLAINT

[Defendant Michael L. Canning]: Customer interest in our Atlas type and SoC platforms has been very strong, especially in the tier one PND market, and we expect them to be significant contributors to our revenue growth in 2008 and beyond as these and other design wins move into high volume production.

\* \* \*

Interest in and demand for our products continues to accelerate in our wireless business. One of our key tier one customers has launched their first new GPS-enabled hand set, which has been qualified at two operators. And one of our leading wireless customers, Research in Motion, continues to launch new GPS-enabled products and expand a number of operators supporting their platform. Multiple handsets based on SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio (inaudible), Asus and Amoi, one of the leading local handset manufacturers in China. In addition, our diverse customer base continues to introduce mobile products based on our award winning GPS technology. Of particular note this quarter, many of the tier one handset manufacturers have launched GPS Bluetooth accessory modules based on SiRFstarIII and compatible with a variety of existing handsets which can provide GPS navigation, mapping and other traffic data to the appropriate Bluetooth enabled phones.

Our end-to-end location platform continues to gain momentum. For example, LBS services based on a SiRF secure user plain 1.0 AGPS server were launched by Chung-Hwa Telecom in July, and our SiRF studio development platform for LBS applications is getting good reception at some of the leading operators worldwide. In our consumer markets segment Garmin launched a new generation of their SiRFstarIII based edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON handhelds featuring National Geographic's award winning, full color, topographic maps. We're also experiencing good growth and substantial sustained interest from Asian consumer electronics and computing companies in some of the more mobile applications of GPS into media players, cameras and gaming systems. Already a leading manufacturer has introduced a SiRFstarIII based GPS accessory to a portable gaming system, which is expected to be deployed globally at an attractive price point early in 2008.

With our newly extended product portfolio and a major new operational base in China, we believe there will be substantial growth in this market segment in the next year or so as the use of GPS-based location technology becomes a standard feature in consumer electronics, and we believe that we are extremely well positioned to enjoy that growth. Earlier this quarter, we signed a major agreement with Intel to jointly develop a series of innovative products designed to bring our GPS technology to mainstream mobile computing platforms. And we continue to receive positive feedback from our customers on this.

\* \* \*

Demand for our products is robust across all market segments and we expect to see Q4 revenues in the range of $99 to $102 million with at least 10% of this revenue coming from SoC products. This will bring revenue for the year into the range $328 million to $331 million. Assuming a tax rate of 5% to 10%, we are modeling EPS for Q4 in the range $0.31 to $0.33.

\* \* \*

[CANNING]: Well there's always competition in the marketplace, and that's something we have expected and forecast for sometime. So it's not surprising that competitors are there. It's not surprising that if they want to try to win business from us, they try to offer lower prices. But we plan to be just as competitive going forward as we have been in the past. And we expect to win more sockets than we lose and to improve the value of the sockets that we win.

[Defendant Geoffrey RIBAR]: So I think the other point is clearly, right, we've been able to sustain our market share, sustain our margin, sustain our business model in this pricing environment. So I think we've done an outstanding job over an extended period of time of maintaining our business.

## Disclosures at the End of the Class Period

34.     Then, on February 4, 2008, SiRF shocked the market when it issued a press release announcing the Company's financial results for fourth-quarter and fiscal year 2007, stating in relevant part:

*SiRF reports record revenue*

SAN JOSE, Calif. – February 4, 2008/PRNewswire/ – SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its fourth quarter and year-ended December 31, 2007.

Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of 35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent, as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.

Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per diluted share, based on 64.3 million diluted weighted average shares outstanding. This compares with net income of $9.1 million, or $0.16 per diluted share, based on 56.1 million diluted weighted average shares outstanding in the fourth quarter of 2006.

Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share, based on 55.5 million diluted weighted average shares outstanding. This compares with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.

* * *

Total cash, cash equivalents and short-term investments were $139.4 million at December 31, 2007, compared with $170.2 million at December 31, 2006. The Company had no long term investments at December 31, 2007, compared with $26.4 million at December 31, 2006. During the third quarter of 2007, SiRF acquired Centrality which led to the decrease in cash, cash equivalents and

investments.

"This was a good Quarter for SiRF fueled by strong seasonal demand for GPS location-enabled consumer products, and we reported record growth in revenue and units. However, our gross margin performance was negatively impacted by a combination of competitive market pricing and a shift of product mix," said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. The results of Centrality's operations have been included in SiRF's consolidated results of operations since the August 6, 2007 acquisition close date. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

* * *

35.     On the conference call following the earnings release, Canning admitted that defendants had expected gross margins to decline:

We had always expected that gross margins would start to shift down as ramping of certain products occurred and as competitive influences came into the market. So for the moment, I think, it's probably best to assume that we'll be around 50% gross margin.

36.     This news shocked the market, causing shares of SiRF to plummet $8.91 per share – a 54% drop from the previous day's closing price of $16.27 – to close on February 5, 2008, at $7.36 per share on extremely heavy volume of more than 63 million shares traded.

37.     That same day, February 5, 2008, *Forbes.com* published an article titled "SiRF Shares Wiped-Out," noting, among other things, that "[d]espite demand for the GPS units, pricing has gone down significantly over the last year putting strain on SiRF to lower prices as well." The *Forbes.com* article stated the following:

**SiRF Shares Wiped-Out**
Lisa LaMotta, 02.05.08, 4:30 PM ET

Shares of SiRF Technologies drowned on Tuesday.

The firm closed trading down 54.8%, or $8.91, to $7.36 after announcing fourth-quarter earnings below analyst estimates.

SiRF Technologies, makes parts for GPS devices. The firm saw its shares fall after it reported an 89% decrease in fourth-quarter profits to $0.7 million from $9.1 million the year before. The company also gave a miserable outlook for the first-quarter, predicting a loss of 4 cents per share on revenue of $71 million to

$77 million. Analysts polled by Thomson Financial expected, on average, profit of 24 cents per share on revenue of $92.4 million.

SiRF is the leading supplier of global positioning system chips, supplying industry-leading brands like TomTom and Garmin. Despite demand for the GPS units, pricing has gone down significantly over the last year putting strain on SiRF to lower prices as well.

"The guidance was the big bugaboo," said Jefferies analyst Adam Benjamin. "We've been concerned about Portable Navigation Devices pricing pressure, but thought the wireless would offset that. Handsets are a billion-unit market; as that takes off that could dwarf the PND market."

Benjamin downgraded the stock to "hold" from "buy" and lowered his price target to $9 from $32.

"I think over time you will see GPS in all handsets," added Benjamin, "but the question is 'who is going to benefit from that?'"

SiRF purchased Centrality Communications, another GPS chip-maker, June of last year, giving it the potential to be a bigger player in the wireless market. Mobile phone currently incorporate GPS technology, but it is not widely used. The industry is making a shift over to 3G, or W-CDMA standards, opening up the market for next-gen mobile devices.

38.     Also on February 5, 2008, the *Associated Press* published an article quoting Piper Jaffray analyst Amit Kapur who downgraded SiRF. In the article, Kapur noted the Company's "disappointing" and "surprising" profit margins for the quarter. The *Associated Press* article stated the following:

**Sirf Shares Plunge on 1Q Outlook**
Tuesday February 5, 8:54 pm ET
**Sirf Technology Shares Fall More Than 50 Percent After Weak 4th Qtr, Disappointing Outlook**

NEW YORK (AP) -- Shares of chip maker Sirf Technology Inc. lost more than half their value Tuesday after the company reported an 89 percent drop in fourth-quarter profit and issued a disappointing first-quarter outlook.

Shares tumbled $8.91, or 54.8 percent, to close at $7.36. They earlier hit a record low of $6.97.

Sirf predicted a first-quarter loss of 4 cents per share on revenue of $71 million to $77 million.

Analysts polled by Thomson Financial expect, on average, profit of 24 cents per share on revenue of $92.4 million.

At least five analysts downgraded the company.

Piper Jaffray analyst Amit Kapur downgraded Sirf to "Neutral" from "Buy" and said it released "disappointing" and "surprising" profit margins for the quarter.

Kapur said he was surprised by the company's first-quarter sales guidance compared with his original estimate of $90 million.

He also warned that the downside risk to the company's estimates remains if economic conditions further deteriorate.

Oppenheimer & Co. analyst Vijay R. Rakesh downgraded Sirf to "Perform" from "Outperform" and noted that the company has not provided a full-year outlook because of economic concerns.

Rakesh slashed his 2008 profit estimate for the company to 55 cents per share from $1.20 per share.

He also cut his 2008 revenue estimate to $375 million from $430 million.

[Emphasis added.]

39.     Throughout the Class Period, defendants presented a misleading picture of SiRF's business and prospects. Instead of truthfully disclosing during the Class Period that SiRF's business was not as healthy as represented, defendants knew or recklessly disregarded and failed to disclose to the investing public the Company's actual financial condition and future prospects.

## LOSS CAUSATION

40.     By misrepresenting SiRF's business and financial performance, defendants presented a misleading picture of SiRF's business and prospects. Thus, instead of truthfully disclosing during the Class Period that SiRF's business was not as healthy as represented, defendants failed to disclose the Company's actual financial position.

41.     These material omissions caused and maintained the artificial inflation in SiRF's stock price throughout the Class Period and until the true facts were revealed to the market.

42.     Defendants' misleading statements and omissions had the intended effect and caused SiRF stock to trade at artificially inflated levels throughout the Class Period.

43.     The public revelations regarding the truth about SiRF's business, financial performance and future prospects, when disclosed to the market, caused the value of the Company's securities to decline, thereby damaging plaintiff and the Class.

## COUNT I

### Violation Of Section 10(b) Of The Exchange Act
### And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase SiRF securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SiRF securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SiRF as specified herein.

48.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SiRF's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material

1  facts necessary in order to make the statements made about SiRF and its business operations and

2  future prospects in the light of the circumstances under which they were made, not misleading, as

3  set forth more particularly herein, and engaged in transactions, practices and a course of business

4  which operated as a fraud and deceit upon the purchasers of SiRF securities during the Class

5  Period.

6      49.    The Individual Defendants' primary liability, and controlling person liability,

7  arise from the following facts: (i) the Individual Defendants were high-level executives and/or

8  directors at the Company during the Class Period and members of the Company's management

9  team or had control thereof; (ii) the Individual Defendants, by virtue of their responsibilities and

10  activities as senior officers and/or directors of the Company were privy to and participated in the

11  creation, development and reporting of the Company's internal budgets, plans, projections and/or

12  reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with

13  the other defendants and was advised of and had access to other members of the Company's

14  management team, internal reports and other data and information about the Company's

15  finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware

16  of the Company's dissemination of information to the investing public which they knew or

17  recklessly disregarded was materially false and misleading.

18

19      50.    The defendants had actual knowledge of the misrepresentations and omissions of

20  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

21  ascertain and to disclose such facts, even though such facts were available to them. Such

22  defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

23  for the purpose and effect of concealing SiRF's operating condition and future business prospects

24  from the investing public and supporting the artificially inflated price of its securities. As

25  demonstrated by defendants' overstatements and misstatements of the Company's business,

26  operations and earnings throughout the Class Period, defendants, if they did not have actual

27  knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain

28  such knowledge by deliberately refraining from taking those steps necessary to discover whether

---

CLASS ACTION COMPLAINT

1    those statements were false or misleading.

2        51.    As a result of the dissemination of the materially false and misleading information

3    and failure to disclose material facts, as set forth above, the market price of SiRF securities was

4    artificially inflated during the Class Period. In ignorance of the fact that market prices of SiRF's

5    publicly traded securities were artificially inflated, and relying directly or indirectly on the false

6    and misleading statements made by defendants, or upon the integrity of the market in which the

7    securities trade, and/or on the absence of material adverse information that was known to or

8    recklessly disregarded by defendants but not disclosed in public statements by defendants during

9    the Class Period, plaintiff and the other members of the Class acquired SiRF securities during the

10   Class Period at artificially high prices and were damaged thereby.

11

12       52.    At the time of said misrepresentations and omissions, plaintiff and other members

13   of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

14   other members of the Class and the marketplace known the truth regarding the problems that

15   SiRF was experiencing, which were not disclosed by defendants, plaintiff and other members of

16   the Class would not have purchased or otherwise acquired their SiRF securities, or, if they had

17   acquired such securities during the Class Period, they would not have done so at the artificially

18   inflated prices which they paid.

19       53.    By virtue of the foregoing, defendants have violated Section 10(b) of the

20   Exchange Act, and Rule 10b-5 promulgated thereunder.

21       54.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

22   other members of the Class suffered damages in connection with their respective purchases and

23   sales of the Company's securities during the Class Period.

24                           **COUNT II**

25   **Violations Of Section 20(a) Of The Exchange Act**
     **Against the Individual Defendants**
26

27       55.    Plaintiff repeats and realleges each and every allegation contained above as if

28   fully set forth herein.

56.    The Individual Defendants acted as controlling persons of SiRF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the Company's decision making, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, SiRF and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: February 19, 2008                    Respectfully submitted,

**GLANCY  BINKOW & GOLDBERG LLP**

By: _____
　　　　Lionel Z. Glancy
　　　　Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

**POMERANTZ HAUDEK BLOCK
　　GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North La Salle Street #2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

**MURRAY, FRANK & SAILER LLP**
Brian P. Murray
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**LAW OFFICES OF HOWARD G. SMITH**
　Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847

CLASS ACTION COMPLAINT

Facsimile: (215) 638-4867

***Attorneys for Plaintiff***

SWORN CERTIFICATION OF PLAINTIFF BRIAN J. MAJUR
SIRF TECHNOLOGY HOLDINGS, INC. SECURITIES LITIGATION

I, Brian J. Majur, certify that:

1. I have reviewed the Complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in the securities, which are the subject of this action, during the Class Period set forth in the Complaint are as follows:

> Purchased 100 shares on 01/11/2008 for the price of $19.18 per share.
> Purchased 100 shares on 01/16/2008 for the price of $17.11 per share.
> Purchased 150 shares on 01/29/2008 for the price of $16.07 per share.
> Purchased 200 shares on 01/29/2008 for the price of $16.08 per share.

5. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

◯Yes ● No     Are you now or were you ever an employee of the company?

I declare under penalty of perjury that the foregoing are true and correct statements.


Dated: February 18, 2008     _/s/ **Brian J. Majur**_____
                             (Submitted Electronically)